UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CHAD MERWIN FEIST,<br><br>                    Petitioner,<br><br>    vs.<br><br>BOB DOOLEY, WARDEN;<br><br>                    Respondent. | 5:16-CV-05031-JLV<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on Chad Merwin Feist's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  See Docket No. 1. Mr. Feist was formerly an inmate at the Mike Durfee State Prison in Springfield, South Dakota, was paroled in October, 2016, but is now again (as of December 19, 2016), an inmate at the South Dakota State Penitentiary in Sioux Falls, South Dakota.  Pending is respondent's motion to dismiss.  See Docket No. 16.  This matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the October 16, 2014, standing order of the Honorable Jeffrey L. Viken, Chief District Judge.

## FACTS

### A.    Pre-Plea State Court Proceedings

Mr. Feist's criminal charges originated out of allegations made against him by a woman, "RR," that on September 30, 2012, Mr. Feist pulled her

shorts and underwear off while she was unconscious due to intoxication and incapable of consent and performed oral sex on her.  Initially, Mr. Feist was charged on October 15, 2012, via a complaint accompanied by an affidavit of probable cause.  See Ticket/Complaint, State v. Feist, No. K 4333906 (4th Cir. Oct. 15, 2012).[1]  It is apparent from later testimony that on September 30, 2012, Mr. Feist was already on parole on a prior felony conviction.  That parole was revoked and, during much of the pendency of his criminal case stemming from the September 30 events, he resided in a state penitentiary at some distance from the court in which the proceedings were pending.  Because of this, when a hearing was scheduled in his criminal case, the presiding circuit court judge, the Honorable John Bastian, would enter an order directing Mr. Feist to be transported from prison to Belle Fourche, South Dakota, to attend the hearing.

On November 13, 2012, the state obtained an indictment from a grand jury charging Mr. Feist with two counts.  See Indictment, State v. Feist, 09C12000282AO[2] (Nov. 13, 2012).  The typewritten indictment charged Mr. Feist with first-degree rape and attempted first-degree rape.  Id.  The first page of the indictment was signed "a true bill" by the grand jury foreperson. Id.

---

[1] The initial complaint was replaced by an amended complaint and then a second amended complaint.  None of these documents are at issue herein.

[2] Citations to the state court case numbers are seemingly inconsistent throughout this opinion but are taken directly from individual documents which are cited to.  The documents themselves contain inconsistent numbers. Despite the vagaries of the numbers they are all part of Mr. Feist's underlying criminal case.

The third and final page of the indictment contained two sections:  (1) a section in which the state could request an arrest warrant or summons and (2) a section in which the state could demand that the defendant give it notice if he intended to assert an alibi defense.  Id.  The request for an arrest warrant or summons was not signed by the state.  Id.  This is because Mr. Feist was already in the state's custody due to his parole revocation on his earlier charge and, therefore, no arrest warrant or summons was necessary to bring him to court.  The state did, however, sign the request for notice of intent to assert an alibi defense.  Id.

The state also filed a Part II information charging Mr. Feist with being a habitual offender.  See State v. Feist, 09CI2000282AO Part II Information (4th Cir. Oct. 23, 2012).  The information alleged Mr. Feist had three prior felonies: an August, 2003, conviction for theft; a June, 2004, felony DUI conviction; and an October, 2011, conviction for witness tampering.  Id.  If Mr. Feist was convicted of either charge in the indictment and also found to be an habitual offender, he faced a possible maximum sentence of life in prison.

Mr. Feist was arraigned on the indictment in a hearing before Judge Bastian on November 14, 2012.  During the hearing, the state made a motion to amend the indictment in open court to correct three errors.  See Arraignment Transcript (AT) at p. 5, State v. Feist,  09CRI12-282 (4th Cir. Nov. 14, 2012).  The state moved to change count one of the indictment to third-degree rape and count two of the indictment to attempted third-degree rape. Id.  In addition, the state moved to amend count one to reflect that third-degree

3

rape was a class two felony.  Id.  The state inquired of Mr. Feist's counsel if there were any objection to simply writing those corrections on the face of the indictment; Mr. Feist's counsel indicated she had no objection.  Id.  The words "first" in both count one and count two of the indictment were then crossed out and the words "3rd" written above them; the "1" was changed to a hand-written "2" following the word "Class" in count one.  Id.  At the end of the hearing, counsel for Mr. Feist discussed with the court logistical issues in connection with the fact that Mr. Feist was currently incarcerated at a state prison on a parole revocation.  Id. at p. 11.

During the course of his case, Mr. Feist and his counsel received a copy of the grand jury transcript.  RR testified before the grand jury and never at any time indicated Mr. Feist penetrated her body with any part of his body.

Counsel for Mr. Feist filed a motion to suppress Mr. Feist's confession on the grounds that it was coerced in violation of the Fifth Amendment and that it was taken in violation of Miranda.[3]  An evidentiary hearing on the motion was held on January 17, 2013.  In advance of the hearing, a subpoena was issued to Belle Fourche Police Officer Chris Schmoker, to whom Mr. Feist had given his confession on October 13, 2012.  The subpoena directed Officer Schmoker to appear in court on January 17 at 3:30 p.m.  Also in advance of the hearing, a motion and order for transportation was issued directing the South Dakota

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

State Penitentiary to send Mr. Feist on the shuttle to the Meade County Jail in Sturgis, South Dakota, on January 9, 2013, through January 17, 2013.[4]

In addition to Officer Schmoker's testimony, a DVD recording of Mr. Feist's confession was introduced into evidence at the suppression hearing. In the confession, Mr. Feist stated he barely knew RR. Mr. Feist admitted to removing RR's shorts and panties and performing oral sex on her. Mr. Feist claimed RR was awake during these events.

Following the January 17 evidentiary hearing, both the state and counsel for Mr. Feist submitted post-hearing briefs to the court. On April 15, 2013, the court issued a memorandum decision holding Mr. Feist was not in custody at the time he made his statement so Miranda warnings were not required and that Mr. Feist's statement was entirely voluntary and uncoerced.

On April 25, 2013, the state filed proposed findings of fact and conclusions of law for the court to consider on Mr. Feist's motion to suppress. On June 10, 2013, counsel for Mr. Feist filed defendant's proposed findings of fact and conclusions of law on the motion for the court to consider. The court never adopted or signed either proposal, however, because Mr. Feist instead entered into a plea agreement shortly thereafter.

---

[4] Mr. Feist alleges that no suppression hearing took place. The transcript for the suppression hearing was inexplicably not part of the docket of Mr. Feist's criminal case. However, the hearing assuredly took place. During the pendency of this federal habeas action, this court ordered that the transcript of the suppression hearing in Mr. Feist's criminal action be provided to this court. Respondent duly provided it. It is filed herein in this court's docket at Docket 39.

**B.    Plea and Sentencing in State Court**

Mr. Feist was convicted on June 27, 2013, pursuant to a no contest plea
to an information charging a reduced count of attempted sexual contact in
violation of SDCL §§ 22-4-1 and 22-22-7.2.  See Change of Plea Transcript
("COPT"), State v. Feist, 09CRI12-282 (4th Cir. Jun. 27, 2013).   The three-page
plea agreement was in writing.  Id. at p. 2.  At the hearing, Mr. Feist
acknowledged the signature on the plea agreement was his, he had read it
before signing it, and he had had adequate time to discuss the terms of the
agreement with his counsel.  Id.

Judge Bastian summarized the plea agreement as follows:  Mr. Feist
would plead no contest, the state would dismiss the indictment, the state
would dismiss the information alleging Mr. Feist to be an habitual offender, the
sentence Mr. Feist would receive would run concurrently with a sentence he
was already serving on a parole revocation on a prior felony conviction, and
Mr. Feist would get credit for time served from the time of his arrest on October
13, 2012, until the date of sentencing.  Id. at p. 3.  Judge Bastian advised
Mr. Feist that a plea of no contest would result in a conviction just the same as
if he had pleaded guilty.  Id.  Judge Bastian advised Mr. Feist that the charge
of sexual contact was a Class 4 felony, but because he was pleading to an
attempt, it would be punished as a Class 5 felony (a lower class of felony) and
would be punishable by up to five years' imprisonment.  Id.

Mr. Feist testified that his understanding of the plea agreement was the
same as Judge Bastian's.  Id. at p. 4.  Judge Bastian asked Mr. Feist if there

was anything else the parties agreed to that was not mentioned on the record. Id.  Mr. Feist denied that there were any other aspects to the plea agreement. Id.  Both Mr. Feist's counsel and the state confirmed the accuracy of the statement of the terms of the plea agreement on the record.  Id.

Judge Bastian advised Mr. Feist he was entitled to have a preliminary hearing because he was being charged with a felony in an information.  Id.  He explained a preliminary hearing would determine whether there was probable cause to believe Mr. Feist committed the crime of attempted sexual contact.  Id. Judge Bastian asked if Mr. Feist was agreeing, consistent with the terms of the plea agreement, to give up his right to a preliminary hearing.  Id.  Mr. Feist agreed he was waiving his preliminary hearing.  Id.

Judge Bastian advised Mr. Feist if he pleaded no contest to the information, he would be giving up his right to a public jury trial, he would give up his presumption of innocence, he would give up the right to confront and cross-examine witnesses against him, and he would give up the right to call witnesses on his own behalf.  Id. at pp. 4-5.  Mr. Feist testified he understood he would be giving up those rights if he pleaded to the information.  Id. at p. 5. Judge Bastian advised Mr. Feist he had a continuing right to remain silent, but only if he wished to assert that right.  Id.  Mr. Feist testified he understood that.  Id.

In addition to these rights discussed orally on the record at Mr. Feist's change of plea hearing, the written plea agreement also advised Mr. Feist of the following additional rights:  the right to be represented by an attorney at all

7

stages of the case, the right to have court-appointed counsel if he could not afford an attorney, the right to a speedy trial, the right not to be compelled to give testimony against himself, and the right to use the court's subpoena power to compel the attendance of witnesses.  See Plea Agreement at p. 2, State v. Feist, #12-282 (4th Cir. June 27, 2013).

Judge Bastian asked Mr. Feist if he had a copy of the information.  Id. Mr. Feist responded "Yes, I do."  See COPT at p. 5.  The court asked whether Mr. Feist wanted the information read out loud to him in open court.  Id. Mr. Feist testified, "No, I don't, Your Honor."  Id.  Judge Bastian advised Mr. Feist of the elements of the offense as follows:  that on September 30, 2012, Mr. Feist, while at least 15 years old, attempted to engage in sexual contact with a person not Mr. Feist's spouse, who was incapable of consenting because of physical or mental incapacity.  Id. at pp. 5-6.  Judge Bastian advised Mr. Feist the state would have to prove those elements beyond a reasonable doubt.  Id. at p. 6.  Mr. Feist testified he understood this.  Id.

Judge Bastian advised Mr. Feist the maximum penalty for the crime was five years' incarceration, a fine of $10,000 and possible restitution.  Id. Mr. Feist indicated he had no questions about the possible punishment.  Id.

The court asked Mr. Feist if he was in court to enter a plea of his own free will, to which Mr. Feist agreed he was.  Id. at p. 7.  The court asked Mr. Feist specifically if any promises, threats, or force were made to get Mr. Feist to plead to the information.  Id.  Mr. Feist said no.  Id.  Mr. Feist also stated in the written plea agreement that no other promises had been made to

8

him to get him to plead no contest.  <u>See</u> Plea Agreement at p. 2, <u>State v. Feist</u>, #12-282 (4th Cir. June 27, 2013).

The court made findings of fact that Mr. Feist was represented by competent counsel; that he was acting of his own free will without duress; that he understood the nature of the charges, the maximum penalties, and his constitutional and statuory rights; and that Mr. Feist was competent to enter a plea.  <u>See</u> COPT at p. 7.  Mr. Feist then entered a plea of no contest to the information.  <u>Id.</u>

Regarding a factual basis for the plea, the court stated that there had been an evidentiary hearing on Mr. Feist's motion to suppress and the court took judicial notice of the evidence from that hearing.  <u>Id.</u> at p. 8.  The state then stated the following:

> On September 30th of last year, the victim in this case was highly intoxicated.  She had been communicating with her friend throughout the day and had planned to go to her home and stay the night.  The friend was not home.  The friend lived directly next to Mr. Feist, so the victim in this case went to his house.  He offered her his bed where she, for lack of a better word, Judge, passed out.
>
> The next thing she knows the defendant had removed her shorts and underwear and there's no dispute that he was in the process of trying to engage in sexual contact with her while she was unable to consent because she was sleeping and under the influence of alcohol.

<u>See</u> COPT at p. 8.

Judge Bastian inquired whether Mr. Feist had any objection to the state's statement of facts.  <u>Id.</u> at pp. 8-9.  Counsel for Mr. Feist had no objection, but added that Mr. Feist had been drinking the day of the offense

9

too, including drinking together with the victim.  Id. at p. 9.  Counsel also added that, upon awaking, the victim clearly stated she was not consenting and Mr. Feist stopped immediately "and that was the end of it."  Id. Furthermore, counsel stated that after the event, Mr. Feist had given a lengthy statement to police in which he conceded all these facts except for his knowledge of the extent of the victim's intoxication.  Id.  Counsel then stated, based upon all the facts and the elements of the offense, she believed a jury could find Mr. Feist guilty of the charge in the information.  Id.  The court made a finding that there was a factual basis in support of Mr. Feist's plea and he accepted the plea.  Id.  Judge Bastian then stated he would order a presentence investigation (PSI) and a psychosexual evaluation (PSA).  Id. at p. 10.

Mr. Feist was sentenced on August 16, 2013, to five years' incarceration, with one year suspended.  See Judgment of Conviction (JC) at pp. 2-3, State v. Feist, 09C12000282A0 (4th Cir. Sep. 4, 2013).  Mr. Feist was ordered to repay the state the cost of his court appointed attorney's fees, but the amount was left blank at the time.  Id. at p. 2.  Later, on October 11, 2013, an amended judgment was entered in which that amount was filled in.  See Amended Judgment of Conviction (AJC) at p. 2, State v. Feist, 09C12000282A0 (4th Cir. Oct. 11, 2013, *nunc pro tunc* Aug. 16, 2013).

## C.   Post-Sentencing and State Habeas

Mr. Feist did not file a direct appeal.  The court did not advise him at sentencing of his right to appeal.  See Sentencing Transcript (ST) at pp. 1-11.

The judgment itself did notify Mr. Feist of his right to appeal within 30 days. See JC at p. 3.  Mr. Feist filed a state petition seeking a writ of habeas corpus on July 11, 2014.  Counsel was appointed to represent Mr. Feist in his state habeas proceedings.

Mr. Feist's attorney filed a habeas petition raising five issues:

**1.      Ineffective assistance of counsel**—failure to investigate, counsel's medical issues prevented her from functioning as effective counsel, counsel did not review Mr. Feist's PSI with him, and counsel withdrew from representation immediately before sentencing due to health issues.

**2.      Ineffective assistance of counsel on appeal**—failure to appeal upon Mr. Feist's request.

**3.      Cruel and Unusual Punishment**—Mr. Feist's sentence violated the Eighth and Fourteenth Amendments.

**4.      Due Process Clause**—Mr. Feist's confession was coerced.

**5.      Confrontation Clause**—counsel's ineffectiveness caused Mr. Feist to enter into a plea agreement, thereby depriving him of his right to confront and cross-examine witnesses.

An evidentiary hearing was held on January 15, 2015, before the Honorable Michael Day, South Dakota state circuit court judge.  Mr. Feist submitted numerous letters and documents to Judge Day both before and after the evidentiary hearing.  Judge Day held a hearing on April 30, 2015, to discuss these submissions with Mr. Feist.  See Other Hearing Transcript (OHT), Feist v. Dooley, Civ. 14-90 (4th Cir. Apr. 30, 2015).  At the hearing, Judge Day

11

summarized the other issues raised by Mr. Feist in his *pro se* filings with the

court:

> Grand jury indictment defects
> Defects with the information
> Issues with the pre-sentence investigation report
> Mr. Feist's motion to withdraw his plea
> Breach of the plea agreement
> Insufficiency of the judgment of conviction
> Ineffective counsel
> Ineffective counsel on appeal
> State failed to timely file its response to the habeas petition
> Failure to timely hold an evidentiary hearing on the habeas petition
> Plea was invalid because Mr. Feist never admitted understanding the charges including intent
> Circumstantial evidence
> Violation of Due Process because trial was not held within 180 days
> Vindictive prosecution
> Plea agreement, indictment and judgment of conviction do not match

OHT at pp. 2-4.  Judge Day indicated he would consider these additional

issues.  Id. at p. 7.

On June 5, 2015, Judge Day issued a written decision denying relief on

Mr. Feist's petition.  See Habeas Memorandum Decision (HMD), Feist v. Dooley,

Civ. 14-90 (4th Cir. Jun. 15, 2015).  In the decision, Judge Day discussed

Mr. Feist's claim that counsel was ineffective for failing to investigate, whether

Mr. Feist's confession was coerced, Mr. Feist's claim that counsel failed to

implement his request to pursue a direct appeal, and Mr. Feist's claim that his

sentence was cruel and unusual.  See HMD at pp. 13-22.  As to the plethora of

other issues raised by Mr. Feist, the court found those issues were "not

supported by the record or the law, or are outside the confines of a habeas

corpus case."  See HMD at pp. 22-23.  Findings of fact, conclusions of law and

an order consistent with Judge Day's ruling were filed on July 15, 2015.  On

August 12, 2015, Mr. Feist moved the court for a certificate of probable cause.
Judge Day denied the motion the same day.

On August 27, 2015, Mr. Feist moved for the issuance of a certificate of
probable cause from the South Dakota Supreme Court.  That motion was
denied on April 1, 2016.

**D.      Federal Habeas Petition**

Mr. Feist thereafter filed his federal habeas petition with this court on
May 19, 2016.  See Docket No. 1.  In that petition, he raises the following
issues:

**1.      Indictment [& Information] defects** –altered, not signed for
summons, not quashed before information filed, not supported by grand jury
testimony, speedy trial violation, no waiver of right to grand jury indictment
before information filed, indictment insufficient, not filed correctly.

**2.      Information improperly filed**—filed before preliminary hearing
waived, filed before indictment quashed, not filed correctly by clerk, filed before
plea bargain, defective indictment was used to leverage Feist's agreement to the
information, case summary does not support the information.

**3.      Factual basis for plea**—no factual basis for plea, court used the
facts from the suppression hearing to support factual basis, medical issues
rendered counsel ineffective to support the factual basis.

**4.      Ineffective assistance of counsel**—counsel's medical condition
made her ineffective, counsel failed to investigate, counsel failed to raise speedy
trial issue, counsel failed to challenge defects in the indictment and

13

information, counsel failed to go over PSI-PSR with Mr. Feist prior to sentencing, and counsel did not withdraw from representing Mr. Feist when her medical issues rendered her ineffective.

**5. Failure to see and read the pre-sentence investigation report prior to sentencing.**

**6. Plea Agreement**--prosecution's breach of the plea agreement by commenting at the sentencing hearing; plea agreement did not contain a factual basis; plea agreement contradicted the parties' oral understanding; and plea agreement did not match the indictment.

**7. Judgment of conviction** was unduly amended and did not match the case summary, the indictment, the information, or the plea bargain; it was not filed correctly; it was not given to Mr. Feist until three months after his sentencing hearing.

See Docket No. 1 at pp. 5-17.

Respondent admits Mr. Feist's federal petition is timely and that he has exhausted all issues in state court. However, respondent moves to dismiss Mr. Feist's federal petition on the grounds that none of his claims are meritorious. See Docket No. 16. Mr. Feist has filed no less than sixteen separate responses to respondent's motion or "supplements" to the record. See Docket Nos. 10-12, 17-29.

## DISCUSSION

**A.     Principles Generally Applicable to § 2254 Petitions.**

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Federal courts ruling on such petitions are constrained by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a "limited and deferential review of underlying state court decisions." Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005).  A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent." Williams v. Taylor, 529 U.S. 362, 405-06, (2000).  A federal habeas court may not issue the writ merely because it concludes the state court applied clearly established federal law erroneously or incorrectly. Id. at 411.  "Rather, that application must also be *unreasonable*." Id. (emphasis added).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. Thatsaphone v. Weber, 137 F.3d 1041, 1045

(8th Cir. 1998); 28 U.S.C. § 2254(e).  A federal habeas court "may not simply disagree with the state court's factual determinations.   Instead it must conclude that the state court's findings lacked even fair support in the record." Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

Mr. Feist raised several issues in his state habeas petition which were not directly addressed in Judge Day's written decision dismissing Mr. Feist's habeas petition.  The issue for this court is whether all issues raised by Mr. Feist in his state habeas petition, whether or not directly addressed by Judge Day in his memorandum opinion, should be reviewed under the deferential standard of § 2254.

A prerequisite for filing a federal habeas petition under 28 U.S.C. § 2254 is that the state courts had the opportunity to hear federal constitutional claims and adjudicate those claims on the merits.  See Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) ("Section 2254(d)(1)'s 'unreasonable application' test is triggered when a federal claim has been 'adjudicated on the merits' . . .").

In Harrington v. Richter, 562 U.S. 86, 98 (2011), the Supreme Court held that a habeas claim has been "adjudicated on the merits" in state court even if the state court rejected the habeas claim in summary fashion, without a reasoned statement of facts and law.  Id. (citing with approval, inter alia, James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999)).  As the Court noted, a state court need not cite or even be aware of the Court's cases under § 2254; state court decisions must still be shown to be unreasonable applications of federal law before a federal court can issue a habeas petition.  Id. (citing Early v.

16

Packer, 537 U.S. 3, 8 (2002) (*per curiam*)).  The Court also held if the state court did not issue a statement of reasons for its decision, this did not mean that the claim was rejected for some reason other than the merits.  Id.  Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Id. at 99 (citing Harris v. Reed, 489 U.S. 255, 265 (1989)).  "The presumption may be overcome when there is some reason to think some other explanation for the state court's decision is more likely."  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

A long-standing body of case law anticipated the Supreme Court's decision in Harrington.  "[F]or a state court's resolution of a claim to be adjudicated on the merits, so that the state court's determination will be entitled to deference for the purpose of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling."  Hand v. McDonough, 2007 WL 2827728, at *4 (M.D. Fla. Sept. 27, 2007).  Indeed, " '[n]othing in the phrase "adjudicated on the merits" requires the state court to have explained its reasoning process.' "  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002) (citing Sellan, 261 F.3d at 311).  "The statutory language [of §2254(d)(1)] focuses on the result, not the reasoning that led to the result . . .  Accordingly, all that is required is a rejection of the claim on the merits, not an explanation."  Id.  See also Robinson v. LaFleur, 225 F.3d

950, 953 (8th Cir. 2000) (a state court is not required to give a detailed explanation for its finding in a post-conviction proceeding); James, 187 F.3d at 869 (the summary nature of the state appellate court's opinion does not affect the federal habeas court's scope of review or the deference given to state court decisions under AEDPA); Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999) (for purposes of applying the AEDPA standard, a federal court will defer "to the state court's *result*, even if its reasoning is not expressly stated).

Further, the "failure of a state court to set out its reasoning is not equivalent to the conspicuous misapplication of Supreme Court precedent.  [A federal court] will not presume that a state court misapplied federal law . . ." Wright, 278 F.3d at 1256.  To review a state court's adjudication under the standard set forth in § 2254(d)(1), the federal court will evaluate the facts known to the state judge and determine if the state judge's conclusions were objectively unreasonable.  Id.  That is, "[w]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claims, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." Sellan, 261 F.3d at 311-12; see also Bell v. Jarvis, 236 F.3d 149, 158 (4th Cir. 2000) (when the state court summarily rejected petitioner's constitutional claims, its decision was still "on the merits," and a reviewing federal habeas court will conduct an independent examination of the record and Supreme Court law to determine if the state court unreasonably applied or acted contrary to established federal law).

18

Here, the state habeas trial court ruled on the merits of Mr. Feist's claims, even though some of those claims were not individually discussed. There is no indication of another reason for dismissal, or state-law procedural rule that indicates otherwise.  Richter, 562 U.S. at 99; Harris, 489 U.S. at 265. See also Dansby v. Hobbs, 766 F.3d 809, 832 (8th Cir. 2014) (same) (citing Richter, 562 U.S. at 99)).  Thus, this court will focus its review on whether the state court's ultimate decision was an unreasonable application of federal law. Sellan, 261 F.3d at 311-12.

Although Mr. Feist sought review of Judge Day's decision before the South Dakota Supreme Court, that court did not grant review.  The Eighth Circuit has instructed that "when a state appellate court affirms a lower court decision without reasoning, we 'look through' the silent opinion and apply AEDPA review to the 'last reasoned decision' of the state courts."  Worthington v. Roper, 631 F.3d 487, 497 (8th Cir. 2011) (citing Ylst, 501 U.S. at 803-04) (other citations mitted).  "This is so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." Worthington, 631 F.3d at 497.  Therefore, this court examines the state circuit court's memorandum opinion and reviews that decision pursuant to the AEDPA standard.

**B.    Effect of Mr. Feist's Plea in State Court**

When a habeas petitioner has been convicted in his direct criminal proceedings by entering a plea, the scope of issues available to him to be raised

in habeas proceedings is curtailed.  United States v. VandeBrake, 679 F.3d

1030, 1036 (8th Cir. 2012).  As the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has
> preceded it in the criminal process.  When a criminal defendant
> has solemnly admitted in open court that he is in fact guilty of the
> offense with which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of constitutional
> rights that occurred prior to the entry of the guilty plea.  He may
> only attack the voluntary and intelligent character of the guilty
> plea by showing that the advice he received from counsel was not
> within the standards set forth in [McMann v. Richardson, 397 U.S.
> 759 (1970)].
>
> A guilty plea, voluntarily and intelligently entered, may not be
> vacated because the defendant was not advised of every
> conceivable constitutional [issue] he might have to the charge, no
> matter how peripheral such a plea might be to the normal focus of
> counsel's inquiry.  And just as it is not sufficient for the criminal
> defendant seeking to set aside such a plea to show that his counsel
> in retrospect may not have correctly appraised the constitutional
> significance of certain historical facts, . . . it is likewise not
> sufficient that he show that if counsel had pursued a certain
> factual inquiry such a pursuit would have uncovered a possible
> constitutional infirmity in the proceedings.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The Supreme Court has explained why a guilty plea cuts off all

constitutional claims that predate a plea.  Pleas are necessarily based on

imperfect knowledge of the law and facts—one can only know what the result of

a full-blown jury trial will be after the trial has been had, and even then, the

truth is still often in dispute.  McMann, 397 U.S. 769-70.  If a defendant

admits his commission of a crime upon good faith, reasonably competent

advice from his counsel, the defendant assumes the risk that his attorney

might be wrong about the facts or the outcome of a legal issue.  Id. at 774.

The issue presented in habeas proceedings is not whether—in retrospect—counsel was right or wrong about a certain fact or legal analysis, but rather, whether the defendant's plea was made voluntarily and intelligently and upon advice from his attorney that was "within the range of competence demanded of attorneys in criminal cases." Id. at 770-71.  Therefore, a defendant who pleaded guilty because of a prior coerced confession that he believed would be used against him at trial is not entitled to an evidentiary hearing in a habeas proceeding without showing other, extenuating circumstances.  Id. at 771.

Where a habeas petitioner collaterally attacks his plea by arguing that counsel was ineffective in advising petitioner to plead guilty, the petitioner must show not only that his counsel's performance was deficient, he must also show that he was prejudiced by counsel's substandard advice.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (quoting Strickland v. Washington, 466 U.S. 668 (1984)).  In the context of a guilty plea, in order for a habeas petitioner to demonstrate prejudice under Strickland, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

Where the allegation of ineffectiveness centers on a "failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the [petitioner] by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have

led  counsel to change his recommendation as to the plea." Id.  "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id.  "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' " Id. (quoting Strickland, 466 U.S. at 695).

Because Mr. Feist pleaded to his state charge, the following issues are barred from being raised in this habeas proceeding:

**Barred Issues:**

--defects in the indictment

--defects in the information

--voluntariness of his confession[5]

--failure of counsel to investigate

--speedy trial violation

--ineffective assistance in failing to raise speedy trial issue

Despite his plea, Mr. Feist is allowed to raise the following claims:

**Allowed Issues:**

--the knowing and voluntary nature of his plea

--the factual basis for his plea

--ineffective assistance of counsel in recommending the plea

---

[5] This Fourth Amendment issue is also barred because the state court afforded Mr. Feist a full and fair opportunity, including an evidentiary hearing, to litigate his claim.  When those circumstances are present, a state prisoner may not relitigate his Fourth Amendment claim in a federal habeas petition.  Stone v. Powell, 428 U.S. 465, 494-95 (1976).

--failure to disclose and go over the presentence investigation report

--ineffective assistance at sentencing

--ineffective assistance plea and post-plea due to medical issues

--ineffective assistance on appeal

--state's breach of the plea agreement by commenting at sentencing

--irregularities with the judgment of conviction

The court now considers the claims available to and raised by Mr. Feist.

**C.     Whether Mr. Feist's Plea was Constitutionally Valid**

A voluntary and knowing plea is not transformed into a coerced plea simply because the defendant pleaded guilty to obtain a lesser sentence than the maximum possible penalty that would have been applicable if defendant had been convicted at trial.  Brady v. North Carolina, 397 U.S. 742, 751 (1970); Parker v. North Carolina, 397 U.S. 790, 795 (1970).  Guilty pleas are valid if the court record affirmatively discloses the plea was both voluntary and intelligent.  Boykin v. Alabama, 395 U.S. 238, 242 (1969).

A plea is voluntary if it is made by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," and so long as the plea was not induced by threats, misrepresentation, or by promises that are improper, unfulfilled, or unfulfillable.  Brady, 397 U.S. at 755.

A plea is intelligently made if the defendant was aware of the nature of the charge against him, and he was mentally competent and in control of his mental faculties.  Brady, 397 U.S. at 756.  A plea is not rendered

23

unintelligently made simply because, long after the plea was entered, the defendant realizes his cost-benefit analysis as to whether to go to trial or to plead guilty did not correctly take into account every relevant factor which entered into his decision.  Id. at 756-57.

### 1.    Reading the Information

Mr. Feist seems to suggest that his plea was invalid because he had not read the information to which he pleaded.  The record of his change of plea reveals that Mr. Feist told Judge Bastian he had a copy of the information, that he refused Judge Bastian's offer to read the information aloud to Mr. Feist in open court, and that Judge Bastian painstakingly explained the crime asserted in the information, explaining each essential element that the state would have to prove in order to show Mr. Feist committed the crime alleged therein.  See COPT at pp. 4-6, State v. Feist, 09CRI12-282 (4th Cir. Jun. 27, 2013). Furthermore, Judge Bastian twice explained the maximum possible penalty for the crime charged in the information.  Id. at pp. 3, 6.  At his state habeas hearing, Mr. Feist admitted the information was present on his table in the courtroom during the change of plea hearing.  See  State Habeas Hearing Transcript (HHT), at pp. 44-45, Feist v. Dooley, Civ. 14-90 (4th Cir. Apr. 30, 2015).  If Mr. Feist neglected or refused to read the information that was provided to him, and rejected an offer to have the information read aloud to him, he nevertheless was fully informed of the contents of that document and its significance during the change of plea hearing.

24

### 2.      Right to a Preliminary Hearing

Mr. Feist also seems to suggest that he did not properly waive his right to a preliminary hearing which arose from the fact that he was charged with a felony crime in an information, rather than an indictment.  Again, the record belies this assertion.  The plea agreement itself recited Mr. Feist's acknowledgement that he had a right to a preliminary hearing and that he was waiving that right.  See Plea Agreement at p. 2, State v. Feist, #12-282 (4th Cir. June 27, 2013).  In open court at the change of plea hearing Mr. Feist again stated he understood he had a right to a preliminary hearing and was voluntarily giving up that right.  See COPT at pp. 4-6, State v. Feist, 09CRI12-282 (4th Cir. Jun. 27, 2013).  The record clearly shows Mr. Feist acted knowingly when he entered a plea to an information without availing himself first of his right to a preliminary hearing.

### 3.      Factual Basis for the Plea

Mr. Feist also assails the factual basis in support of his plea.  First, the court notes that the requirement of a factual basis for a plea is not constitutional, but the creature of statute and rule.  Matthew v. Johnson, 201 F.3d 353, 368 (5th Cir. 2000); (citing Wabasha v. Solem, 694 F.2d 155, 157 (8th Cir. 1982)).  See also Higgason v. Clark, 984 F.2d 203, 207-08 (7th Cir. 1993); Smith v. McCotter, 786 F.2d 697, 702 (5th Cir. 1986); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (all holding that the constitution does not require a factual basis for a guilty plea).  Nor is an express admission of guilt required by the constitution in order for a plea to be constitutionally

25

valid.  North Carolina v. Alford, 400 U.S. 25, 30-32 (1970).  A factual basis
becomes constitutionally necessary where the guilty plea is accompanied by an
express claim of innocence.  Id. at 38 n.10.  Here, Mr. Feist did not make a
claim of innocence at his change of plea hearing.  Instead, he pleaded no
contest, a plea which the court informed him before he entered it would be
treated as a guilty plea.  Thus, under these circumstances, a factual basis was
not required by the constitution.  Id.

However, even if a factual basis was required at Mr. Feist's change of
plea hearing, a sufficient factual basis was in fact provided.  As recited above,
the court took judicial notice of the facts from the suppression motion and
hearing.  See COPT at p. 8.  In addition, the state orally laid a factual basis for
the plea in open court.  Id. at pp. 8-9.  Mr. Feist's counsel agreed with that
statement of facts and laid her own additional set of facts which ameliorated
somewhat Mr. Feist's role in the events.  Id.  The facts set forth orally at the
change of plea hearing adequately addressed each element of the crime
charged in the information.

The information charged that Mr. Feist had attempted to engage in
sexual contact with someone while she was incapable of giving consent, in
violation of SDCL § 22-22-7.2.  That crime is described as follows:  "any
person, fifteen years of age or older, who knowingly engages in sexual contact
with another person if the other person is sixteen years of age or older and the
other person is incapable, because of physical or mental incapacity, of
consenting to sexual contact, is guilty of a Class 4 felony."  See SDCL § 22-22-

7.2.  South Dakota law defines "sexual contact" as "any touching, not amounting to rape, whether or not through clothing or other covering, of the breasts of a female or the genitalia or anus of any person with the intent to arouse or gratify the sexual desire of either party."  See SDCL § 22-22-7.1. South Dakota law defines an attempt as "any person who attempts to commit a crime and, in the attempt, does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration of that crime."  See SDCL § 22-1-4.

The facts set forth at the change of plea hearing established that the victim, RR, was not capable of giving consent because she was highly intoxicated and "passed out" at the time, that Mr. Feist removed her shorts and underwear, and that Mr. Feist was trying to engage in sexual contact with her. See COPT at pp. 7-9.  Mr. Feist was 48 years old at the time of his change of plea hearing, a fact not stated out loud, but obviously known to Mr. Feist. Furthermore, RR was over the age of 16 and not Mr. Feist's spouse, a fact also well known to Mr. Feist—he stated he barely knew RR in his videotaped confession.  Even though these latter facts were not set forth on the record, Judge Bastian told Mr. Feist the state would have to prove these elements beyond a reasonable doubt if he went to trial.  See COPT at pp. 5-6.  There was an adequate factual basis in support of Mr. Feist's plea.

### 4.      Plea Did Not Match the Indictment

Mr. Feist attacks his plea on the basis that the plea agreement did not match the indictment.  This does not render the plea invalid because the whole

27

point of the plea agreement was to *dismiss* the indictment and allow Mr. Feist to plead to a lesser charge, the charge contained in the information.  Therefore, the fact that the plea agreement did not "match" the indictment is irrelevant.

### 5.    Plea Agreement Varied from the Parties' Oral Understanding

Mr. Feist's final attack on his plea was that the written plea agreement contradicted the parties' oral understanding of the plea agreement.[6]  Again, the record belies this.  The plea agreement was in writing.  Mr. Feist admitted that the signature on the written agreement was his, that he had read the agreement, and that he agreed with it.  See COPT at pp. 2-4.  Judge Bastian then orally set forth the terms of the plea agreement, which were consistent with the terms described in writing.  Id. at pp. 2-3.  Mr. Feist testified he understood these terms of his plea agreement and that he was voluntarily agreeing to them.  Id.  Mr. Feist specifically denied on multiple occasions during the change of plea hearing that any other oral promises or inducements had been made to get him to sign the plea agreement.  Id. at pp. 4, 7.  In the written plea agreement he also denied any other side promises had been made. See Plea Agreement at p. 2.  The record shows that, when he entered his plea, Mr. Feist knew what the terms of the plea agreement were, that his knowledge was consistent with the writing commemorating that agreement, and that he understood and voluntarily agreed to those terms.

---

[6] Mr. Feist does not specify exactly how the plea agreement supposedly varied from the parties' understanding.  The court assumes it is because Mr. Feist claims the state agreed as part of the plea agreement to remain silent at sentencing, an allegation discussed at greater length below.

The court concludes that Mr. Feist's plea was knowing, intelligent and voluntary.  The state court did not unreasonably apply federal law in upholding that plea, nor were the state court's factual findings without support in the record.  Accordingly, because the plea was valid, the court applies Tollett and limits the claims considered herein as previously set forth above.

**D.      Breach of the Plea Agreement**

Mr. Feist alleges the state breached the plea agreement.  He asserts the plea agreement required the state to remain silent at sentencing.  When the state made comments at sentencing, including making a sentencing recommendation for the maximum penalty of five years' incarceration, Mr. Feist alleges the state breached the plea agreement.

This argument is easily dispensed with because it enjoys zero support in the record.  While it is true that a due process violation occurs where the prosecution breaks a promise that formed part of the inducement for the defendant's plea, Santobello v. New York, 404 U.S. 257, 262 (1971), here, Mr. Feist's claim fails because he cannot show the state made a promise and then broke it.  The written plea agreement itself did not contain any provision which restricted the state's ability to comment at sentencing.  See Plea Agreement at pp. 1-3, State v. Feist, #12-282 (4th Cir. June. 27, 2013).  At the change of plea hearing, the court orally summarized the terms of the plea agreement and that summary did not include any provision restricting the state's comments at sentencing.  See COPT at pp. 2-3.  Mr. Feist acknowledged the court's summary was accurate and he agreed to and understood the terms

summarized by the court.  Id.  Mr. Feist further testified twice that no oral promises or inducements were made separate from the written plea agreement to get him to enter into the agreement.  Id. at pp. 4, 7.  Both the state and counsel for Mr. Feist confirmed that the court's recitation of the terms of the plea agreement were accurate.  Id. at p. 4.  The written plea agreement which Mr. Feist signed also contains an averment that no side promises were being made outside of the written terms contained in the agreement.  See Plea Agreement at p. 2.  Finally, at the state habeas hearing, Mr. Feist's counsel testified that the plea agreement did not require the state to remain silent at sentencing.  See HHT at p. 28-29.

The state did not breach the plea agreement because the plea agreement did not require the state to remain silent at sentencing.  Mr. Feist's allegation to the contrary is unsupported by the record.  In denying habeas relief on this basis, the state court did not unreasonably apply federal law; the state court's findings were supported by the record.  This federal court therefore rejects this ground for habeas relief.

**E.  Ineffective Assistance**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann, 397 U.S. at 771 n.14).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a

criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment."  Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice

test." Id.  Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  Bobby v. Van Hook, 558 U.S. 4, 7-8 (2009).  American Bar Association standards and similar directives to lawyers are only guides as to what reasonable conduct by counsel is; they are not its definitive definition.  Id. at 8-9.

The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result.  Porter v. McCollum, 558 U.S. 30, 41 (2009).  In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence–both that adduced at trial, and the evidence adduced in the habeas proceeding"–and "reweigh it against the evidence in aggravation."  Id. at 40-41.  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome."  Id. at 44.

Finally, "[i]neffective assistance of counsel is a mixed question of law and fact and thus on habeas review a federal court is not bound by a state court's conclusion that counsel was effective."  Whitehead v. Dormire, 340 F.3d 532, 537 (8th Cir. 2003).  However, " 'state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d).' "  Id. (citing Strickland, 466 U.S. at 698).  That is, "[a] state court's

findings of fact are entitled to a presumption of correctness."  Miller v. Dormire, 310 F.3d 600 (8th Cir. 2002).

When a petitioner makes an ineffective assistance of counsel claim in a § 2254 petition, Strickland's deferential review of counsel's conduct is paired with the extremely deferential lens through which federal courts view the state court's determination of a habeas claim as dictated by AEDPA.  The result is that the federal court's "highly deferential" review  becomes "doubly" so. Harrington v. Richter, 562 U.S. 86, 105 (2011) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).  "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)."  Id.  The inquiry when a Strickland claim is raised in a § 2254 petition is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

A claim of ineffective assistance of trial counsel requires Mr. Feist to show that his lawyer's representation of him fell below an objective standard of reasonableness and thereby prejudiced his case.  Skillicorn v. Luebbers, 475 F.3d 965, 973 (8th Cir. 2007) (citing Strickland, 466 U.S. at 687).  In a petition under 28 U.S.C. § 2254, however, Mr. Feist must do more:  he must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner."  Skillicorn, 475 F.3d at 973 (quoting Bell v. Cone, 535 U.S. 685, 699 (2002)).

### 1.    Ineffectiveness in Failing to Investigate

Although this claim could be characterized as the type of claim precluded once a petitioner enters a plea (because it allegedly occurred prior to the plea), in the spirit of liberally construing Mr. Feist's petition, the court understands him to be arguing that, had his counsel done a constitutionally effective job of investigating his case, his counsel would not have recommended that Mr. Feist enter into a plea agreement.

There were a finite number of witnesses with any information relevant to the crime:  Mr. Feist, RR, and another woman who was at Mr. Feist's home during a portion of the relevant time, Wanda Haring.  HHT at pp. 46-47. Furthermore, Mr. Feist had given police an admissible confession in which he admitted pulling RR's shorts and underwear down and performing oral sex on her.  HHT at p. 17.  Thus, the only contestable issue was the extent of RR's intoxication, Mr. Feist's knowledge of her state of intoxication, and, by extension, whether Mr. Feist knew RR was incapable of giving consent.  HHT at p. 17.

RR had reported the crime some days after it was alleged to have occurred, so no contemporaneous blood alcohol or preliminary breath tests were taken from RR or from Mr. Feist which would have established objectively each of their respective levels of intoxication on the night of September 30. HHT at p. 19.  Furthermore, both Mr. Feist and RR had given law enforcement a couple of different versions of RR's intoxication.  HHT at p. 19.    Counsel for Mr. Feist attempted to interview RR, but she refused.  HHT at pp. 19-20.

34

Counsel, of course, spoke to Mr. Feist at length on multiple occasions—12 to 20 times in counsel's estimation.  HHT at p. 12.  In addition, she made a motion for, obtained, and reviewed RR's grand jury testimony.  HHT at pp. 14-15, 41, 46.  Also, Mr. Feist indicated his son, Brandon, was at his home on the night in question for part of the time; Mr. Feist gave his son's telephone number to his counsel and asked her to interview him.  HHT at p. 17.  Counsel phoned Brandon and left messages, but he never returned counsel's calls.  HHT at pp. 17-18.  Furthermore, police interviewed Brandon and he told police he was *not* at his father's house on the night of September 30.  HHT at p. 18.  Counsel interviewed the manager of the bar where RR had been drinking earlier on the night of September 30.  HHT at p. 17.  And counsel interviewed Wanda Haring, the woman who was in the home at the same time as RR and Mr. Feist on September 30.  Unfortunately, Wanda's testimony did not match Mr. Feist's description.  Specifically, she confirmed that RR had been drinking on the night in question, that RR was never sober, and that Wanda left soon after RR arrived because Wanda was uncomfortable in RR's presence.  HHT at pp. 19-20.

In addition, counsel made several discovery motions and motions for disclosure.  Counsel made a motion to obtain RR's and other state witnesses' state court records.  She also filed a motion to suppress Mr. Feist's confession.

Mr. Feist insisted at his state habeas hearing that counsel should have interviewed Wanda Haring, the woman who was at his home with him and RR on September 30, and that Ms. Haring would have provided exculpatory

35

evidence.  OHT at p. 6; HHT at pp. 42, 46-47, <u>Feist v. Dooley</u>, Civ. 14-90 (4th Cir. Apr. 30, 2015 & Jan. 15, 2015, respectively).  Mr. Feist's counsel *did* interview Wanda Haring.  HHT at p. 17, 20.  This defeats Mr. Feist's claim factually.  Even assuming counsel did *not* interview Ms. Haring, Mr. Feist's allegation would still fail.

In support of his claim, Mr. Feist supplied Judge Day with an unsworn undated letter from Ms. Haring.  OHT at p. 6.  That letter stated in its entirety as follows:

> Dear Sir,
> I am writing this letter on behalf of Chad Feist.  I cannot and will not ever believe he commited this crime he was aquitted with.  He is a very decent citizen and honestly is not capable in my knowledge of doing what he was accused of.  Chad is a wonderful friend of mine and will always be.  He deserves a second chance to prove himself.  Chad is the type of guy that would bend over backwards to help anyone out whenever he could.  He worked hard to make a good living for himself.  I hope the court system will reconsider and give him the second chance he deserves.  Chad is a super person and will not let you down.  He needs to get back into society to prove himself.
> Thanks for listening to my side.
> Wanda Haring.

<u>See</u> Letter:  To Judge Day with Attachments, page 3 of 3, <u>Feist v. Dooley</u>, Civ. 14-90 (4th Cir.).

The above letter, even if it were sworn testimony, is not exculpatory.  It is a character reference, attesting to Mr. Feist's good character.  At no time does Ms. Haring state that RR was sober, or sober enough, on the night of September 30.  At no time does she deny RR was at Mr. Feist's home on the night in question.  At no time does Ms. Haring indicate she was in the presence of both RR and Mr. Feist the entire night and observed nothing untoward.

36

Instead, she simply states her opinion that the crime Mr. Feist was convicted of was inconsistent with Ms. Haring's perception of Mr. Feist's character.  In fact, the letter contains what might be characterized as an implicit recognition of Mr. Feist's guilt when Ms. Haring implores the court to give him "a second chance."

Judge Day held the habeas record before him was "devoid of any evidence to support Mr. Feist's claim that exculpatory evidence existed."  See HMD at p. 14.  This court agrees.

"[A] meaningful opportunity to present a complete defense does not translate into the right of a defendant to present any evidence he may deem important to his defense."  Strickland v. Lee, 471 F. Supp. 2d 557, 617 (W.D.N.C. 2007).  Instead, to prove prejudice, Mr. Feistw must show the uncalled witnesses would have testified in his defense, that their testimony would have been favorable, and that their testimony "probably would have changed the outcome of the trial."  See Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990); Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994).  In assessing ineffective assistance claims under the Strickland standard, "[t]he decision not to call witnesses is a virtually unchallengeable decision of trial strategy."  United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted, punctuation altered).  The habeas court must avoid "the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time."  Id. (citations omitted, punctuation altered).

37

"Complaints of uncalled witnesses are not favored . . . because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).   "[T]he petitioner ordinarily should explain  . . . with some precision, the content of the testimony they would have given at trial."  Lawrence, 900 F.2d at 130.

Mr. Feist has not shown how Wanda Haring's evidence would have been favorable and/or changed the outcome of his case.  Id.  As indicated above, if Ms. Haring would have told counsel what she stated in her letter to Judge Day, it would not have changed the evaluation of the facts of Mr. Feist's case because Ms. Haring provided no *facts*.  She simply stated her *opinion* of Mr. Feist's character.  This would almost certainly not have been admissible at trial, and even if it were, would not have changed the facts, including Mr. Feist's confessed acts.  Thus, Ms. Waring's statement would not have changed counsel's evaluation of the risks of going to trial versus entering into a plea agreement.

Aside from Ms. Haring's letter, counsel testified to what Ms. Haring actually told counsel contemporaneously with counsel's investigation.  It was not helpful.  Ms. Haring told counsel RR was intoxicated on the night in question, that RR was always intoxicated, and that Ms. Haring left Mr. Feist's home soon after RR's arrival because RR made Ms. Haring uncomfortable.  Thus, Ms. Haring established that Mr. Feist and RR were alone for all but a brief period of time soon after RR's arrival.

Judge Day's decision that counsel did a constitutionally adequate job of investigating Mr. Feist's case was not an unreasonable application of federal law nor were his factual findings unsupported in the record. Accordingly, this court recommends no habeas relief be granted on the grounds that counsel failed to investigate.

### 2.    Ineffectiveness Due to Medical Condition

Mr. Feist alleges his counsel's medical condition rendered her services constitutionally defective. He claims counsel was so ill she could not hear, could not stand, and was unavailable for a lengthy period of time. Judge Day found "there is . . . no evidence that any illness or condition experienced by trial counsel during her representation of Mr. Feist prohibited her from proper representation or investigation." HMD at p. 14.

Counsel testified at the state habeas hearing that she had been diagnosed with a viral vestibular condition that caused some imbalance. HHT at pp. 21-22. She was not prohibited from driving, but chose not to drive for the period from the end of January, 2013, until after April 25, 2013, so as not to put anyone at risk. Id. She testified she did not need to drive herself as she had other resources at her disposal for investigations in cases. Id. Counsel never missed a hearing due to her condition. Id. She had some hearing loss in one ear from January 24 to the end of April and experienced transitory dizziness upon first standing up. Id. Due to this, Judge Bastian asked her to remain seated during hearings during this interval of months to make sure she did not get hurt by losing her balance. Id. Counsel never quit taking new

39

court appointments due to her virus nor did she withdraw from representing any of her existing clients due to the condition.  Id. at p. 23.  Her condition resolved itself.  Id. at pp. 22-23.

Mr. Feist testified that once prior to a court hearing his counsel seemed confused.  Id. at p. 50.  He did not testify that her confusion continued into the hearing.  Id.  He said counsel told him she felt dizzy and could not hear very well.  Id.

The record amply supports Judge Day's finding of fact that there was no evidence that counsel's illness affected her representation of Mr. Feist.  There is no record in the state court files that counsel ever missed a hearing or that any hearing ever had to be continued, delayed, or canceled on account of counsel's health.  Transcripts of the hearings reveal counsel's conduct to be lucid, alert and on point with the subjects being discussed.  Because Judge Day's finding regarding counsel's health is supported by the record, there are no grounds for this court to grant habeas relief on the basis of an alleged illness affecting counsel.  Marshall, 459 U.S. at 432.

### 3.  Failure to Review the Presentence Investigation Report with Mr. Feist

Mr. Feist also alleges counsel was ineffective for failing to review his presentence investigation report (PSI) with him prior to his sentencing hearing.  This allegation was not specifically addressed by Judge Day in his opinion, although it was apparently among the plethora of issues Mr. Feist raised *pro se*.  See OHT at p.3.

40

Counsel testified at the state habeas hearing that she *did* go over Mr. Feist's PSI with him prior to sentencing.  See HHT at p. 32.  She testified she also went over the results of his psychosexual assessment with Mr. Feist. Id.  Mr. Feist testified that, although his counsel went over the psychosexual assessment with him, she never went over the PSI with him.  Id. at p. 45.

At the time of the sentencing hearing, Judge Bastian asked Mr. Feist's counsel whether she had reviewed the PSI and the psychosexual assessment with Mr. Feist.  ST at p. 2.  Counsel answered she had, as to both documents. Id.  Mr. Feist did not voice any disagreement with this on the record.  Id.  The court discussed only two aspects of the PSI in open court at the sentencing hearing:  Mr. Feist's military service record, which was commendable, and his criminal history, which was not.  Id. at pp. 9-10.  Mr. Feist had served nine years in the military in multiple enlistments and was honorably discharged each time.  Id. at p. 9.  The court congratulated Mr. Feist for his military service.  Id.

As to his criminal history, the court noted it was very sparse and minor prior to the year 2000.  Id.  Beginning in the year 2000, however, Mr. Feist had been convicted of four felonies in three different states as well as 10 misdemeanors.  Id.  The court speculated that perhaps a drug or alcohol problem was behind the recent history of criminal convictions.  Id. at pp. 9-10. The court also stated it felt the PSI showed Mr. Feist had the potential to be the good person he wanted to be.  Id. at p. 10.

Under Strickland, Mr. Feist must show not only that counsel was deficient, but also that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 687. Leaving aside, for the moment, the credibility question of whether counsel went over the PSI with Mr. Feist and, if not, whether that was constitutionally defective representation, the court turns to the issue of prejudice. The only two things from the PSI which the court found relevant for discussion were Mr. Feist's military record and his criminal record. The first helped him, the second did not. But both were immutable. Even if Mr. Feist had received this information prior to sentencing, he could not have changed it. Furthermore, both of these records were uniquely known to Mr. Feist. He lived through the events which the military and criminal records documented. In addition, the three felony convictions, and his fourth conviction in this case, were made known to him. The former were recited in the part II information which alleged Mr. Feist to be a habitual offender. A copy of the part II habitual offender information was given to Mr. Feist at his arraignment at the beginning of his case. See AT at pp. 2-3. Nowhere, either here in federal court or in state court, in his criminal or habeas cases, has Mr. Feist alleged his criminal record was inaccurate. The court concludes that Mr. Feist has failed to demonstrate he was prejudiced by not seeing the PSI prior to his sentencing, if indeed he did not see that document. Accordingly, he has not demonstrated Strickland prejudice for this claim.

42

**F.     Failure to See and Read the PSI Prior to Sentencing**

Aside from his ineffective assistance of counsel claim, Mr. Feist also urges a separate, stand-alone claim that his constitutional rights were violated because he did not get to see the PSI prior to sentencing.

Mr. Feist does not specifically state which constitutional provision he alleges was violated by this omission.  The court, reading his petition liberally, believes Mr. Feist relies upon the due process clause of the Fourteenth Amendment.  In order to demonstrate a due process violation exists, as under his Strickland claim, Mr. Feist must show he was prejudiced.  Donnelly v. DeChistoforo, 416 U.S. 637, 648 (1974); Pickens v. Lockhart, 4 F.3d 1446, 1453-54 (8th Cir. 1993).

Where a federal prisoner alleged his due process rights were violated by not seeing the PSI before sentencing, the court denied his request because he had not shown that anything in the PSI was incorrect or inaccurate.  Correa-Gutierrez v. United States, 455 Fed. Appx. 722, *1 (8th Cir. 2012) (unpub'd).  Similarly, where a defendant alleged he had not read the PSI, but never asked for additional time to review the PSI at sentencing and did not describe what additional matters he would have raised at sentencing if he had seen the PSI, the court held any error was harmless.  United States v. Prado, 204 F.3d 843, 845 (8th Cir. 2000).  Where the defendant did not indicate how he was prejudiced by failure to read the PSI, the claim that defendant's rights were violated was rejected.  United States v. Krzyzaniak, 702 F.3d 1082, 1086 (8th Cir. 2013).  See also United States v. Soltero, 510 F.3d 858, 863-64 (9th Cir.

2007) (defendant must show prejudice if he alleges he did not see the PSI and counsel did not review with him); United States v. Esparza-Gonzalez, 268 F.3d 272, 274 (5th Cir. 2001) (defendant must show prejudice as a result of not having read the PSI before sentencing); United States v. Barrows, 996 F.2d 12, 14 (1st Cir. 1993) (defendant's failure at sentencing to request time to read PSI or to request a continuance waives any claim that he should have been allowed to read PSI before sentencing); United States v. Knorr, 942 F.2d 1217 (7th Cir. 1991) (defendant can waive reading the PSI when he participates in sentencing without objecting).

Here, it is true that South Dakota state law, like federal law, required the PSI to be disclosed to Mr. Feist before he was sentenced.  See SDCL § 23A-27-7;  Fed. R. Crim. P. 32.  However, as with his related claim of ineffective assistance of counsel, he is required to show he was prejudiced by the failure to read his PSI.  Without a showing of prejudice, all Mr. Feist has established is a violation of state law, which does not provide grounds for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Mr. Feist's due process claim premised on failure to read his PSI fails for the same reason his related Sixth Amendment ineffective assistant claim fails—he has not alleged or established any prejudice therefrom.  Accordingly, the court recommends this claim be denied.

**G.    Errors With Respect to Mr. Feist's Judgment of Conviction**

   **1.    The State Failed to Serve Mr. Feist with the Judgment**

Mr. Feist alleges the state failed to serve his judgment of conviction on him for three or four months after his sentencing.  By the time his judgment was served on him, the 30-day period during which Mr. Feist could have pursued a direct appeal had already elapsed.  Therefore, Mr. Feist alleges the state's failure to promptly serve his judgment on him deprived him of his chance to appeal.

At the state habeas hearing, Mr. Feist's trial counsel testified unequivocally that Mr. Feist did not want to appeal his sentence.  HHT at p. 34.  Mr. Feist testified at the habeas hearing that he filed a motion in December, 2013, to withdraw his plea because he "never had a chance to appeal my case based on I didn't have a Judgment of Conviction."  HHT at p. 52.  However, examination of Mr. Feist's December 31, 2013, motion to withdraw his plea shows he never explicitly stated therein that he *wanted* to appeal or that he *told* his lawyer to file an appeal for him.  See Motion to Withdraw Plea of Nolo Contendere at p. 2, State v. Feist, 09C1200282AO (4th Cir. Dec. 31, 2013).

At the state habeas hearing, Mr. Feist never affirmatively stated he would have appealed had his judgment been timely served on him.  See HHT.  He never testified he told his lawyer to file an appeal for him.  Id.  And he never indicated what issues, if any, he would have raised on appeal had he received his judgment within the 30-day time frame for appealing.  Id.

45

Interestingly, shortly before the sentencing hearing (a few days before), Mr. Feist had told the court services officer who was preparing Mr. Feist's PSI that he wanted to withdraw his plea.  Because of this, counsel had a private conversation with Mr. Feist immediately before sentencing in which the two of them discussed issues related to withdrawing the plea.  Counsel had this conversation contemporaneously transcribed by a court reporter.  The transcript was submitted in the state habeas hearing after Mr. Feist specifically waived any attorney-client privilege or attorney work product privilege.  See Transcript at pp. 1-3, Feist v. Dooley, Civ. 14-90 (4th Cir. Oct. 30, 2014).

In the pre-sentencing transcript, counsel asked Mr. Feist if he still wanted to withdraw his plea.  Id. at pp. 2-3, 4-5.  Mr. Feist acknowledged he had previously said that, but "at the time when I was mad; but, no, I don't feel that way now."  Id. at p. 5.  Later, he again unequivocally stated that he did not want to withdraw his plea.  Id. at p. 6, lines 13-15.  Counsel then explained that, once he was sentenced, it would be almost impossible to withdraw his plea; counsel asked again if Mr. Feist wanted to withdraw his plea.  Id. at p. 7, lines 7-22.  Mr. Feist again said "no."  Id. at p. 7, line 23.

Counsel advised Mr. Feist that, in her estimation, there was a very realistic chance he would be sentenced to the maximum of 5 years' incarceration, largely because of the results of the psycho-sexual assessment "PSA".  Id. at p. 10, lines 18-23.  Counsel then advised Mr. Feist there were not "any really viable direct appeal options."  Id. at p. 11 lines 9-10.  Mr. Feist replied, "that's cool."  Id. at line 11.

46

### a.   Failure to File a Requested Appeal

Despite the two-pronged Strickland test, when an attorney fails to file a direct appeal after her client instructs her to do so, no inquiry into prejudice is allowed.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).[7]  Failure to pursue an appeal that has been requested by a client is deficient attorney performance *per se*.  Id.  In such a case, "prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error."  Id. at 483-84.  This remains true even where the petitioner waived his appellate rights as part of the plea agreement.  Watson v. United States, 493 F.3d 960, 964 (8th Cir. 2007).  A defendant has "the ultimate authority" to determine "whether . . . to take an appeal."  Florida v. Nixon, 543 U.S. 175, 187 (2004).  As a matter of law, the right to appeal is one that can be waived only by the defendant himself, not by counsel.  Id.

In the Watson case, the district court was reversed because it denied habeas relief to a petitioner who alleged that he had requested an appeal and that his trial counsel had refused to appeal.  Id.  The Eighth Circuit stated that the district court "was not required to credit Watson's assertion" that he wanted to appeal, but that the district court could not *discredit* that assertion without first holding an evidentiary hearing to evaluate Watson's credibility.  Id.  See also Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000)

---

[7] Mr. Feist does not couch his claim in the language of ineffective assistance. However, a failure to timely serve a judgment is simply a state law violation, without more.  In an effort to liberally construe Mr. Feist's claim, the court analyzes the claim under the rubric of a Sixth Amendment ineffective assistance claim.

(affirming district court's denial of habeas relief on a failure-to-appeal ineffective assistance claim where the court discredited the petitioner's testimony after an evidentiary hearing at which both the attorney and the petitioner testified).

It is axiomatic that the petitioner must show he asked his trial counsel to file an appeal.  Barger, 204 F.3d at 1182 (citing Holloway v. United States, 960 F.2d 1348, 1357 (8th Cir. 1992)).  A habeas petitioner's bare allegation, by itself, that he made a request to appeal is not sufficient to render habeas relief if more credible evidence indicates the contrary.  Id. at 1182.

In Barger, counsel testified she told her client there were no appealable issues and the client understood no appeal would be filed and did not object.  Barger, 204 F.3d at 1181.  Barger testified she told her counsel she wanted to appeal, the lawyer said she would do some research and "be in touch."  Id.  No appeal was ever filed and Barger never followed up with her lawyer to ask about the appeal.  Id.  The court held this record failed to establish that Barger unequivocally asked counsel to appeal.  Id.

Here, likewise, Mr. Feist never testified he told his trial counsel to appeal, not here in this court, and not below in his state habeas proceedings.  Indeed, all he points out is that the *time* for appealing (30 days under state law), had elapsed by the time the state served him with his judgment of conviction.  This is true, but it does not establish that Mr. Feist *told* his counsel to file an appeal.  The evidence from the transcript created by counsel right before sentencing indicates she advised Mr. Feist about his chances of success on an

48

appeal and Mr. Feist did not ask her to appeal for him.[8]  When counsel told Mr. Feist there were no appealable issues, he replied "that's cool."

Although a client has a constitutional right to appeal, and need not show prejudice if his right to appeal was violated, Mr. Feist has *not* established that he *told* his trial counsel to file an appeal for him.  He also never affirmatively establishes that he would have undertaken an appeal *pro se* had he been timely served with his judgment of conviction.  Because of this, he cannot succeed on this claim.

**b.    Failure to Consult As To An Appeal**

In his various sixteen "supplements" filed with this court, Mr. Feist also argues that his counsel had a duty to consult with him about whether he wanted to appeal.  Mr. Feist alleges counsel failed to consult.

The constitution requires counsel to consult with her client about an appeal when (1) any rational defendant would want to appeal or (2) the client reasonably demonstrated an interest in appealing.  <u>Flores-Ortega</u>, 528 U.S. at 480.  Here, neither circumstance is present.

No rational client would want to appeal.  Mr. Feist pleaded no contest and was found guilty.  Therefore, the only issues he could raise on appeal were whether the plea was valid, whether the prosecution violated the plea

---

[8] Mr. Feist asserts repeatedly in his various supplements that counsel has a duty to consult with the client about an appeal, citing <u>Thompson v. United States</u>, 504 F.3d 1203, 1203-08 (11th Cir. 2007).  This is an accurate statement of the law.  However, the record from the state habeas proceedings shows Mr. Feist's counsel *did* consult with him about an appeal.  The state habeas court's findings on this matter are amply supported in the record.

49

agreement, and whether his sentence was appropriate and lawful.  Success on appeal would have resulted in the appellate court vacating the plea and sending Mr. Feist back to circuit court to be tried for third-degree rape, attempted third-degree rape, and being an habitual offender.

Prior to the plea, Mr. Feist was facing a maximum possible punishment of life in prison.  That was because he was charged with third-degree rape, attempted third-degree rape and an habitual offender information.  By virtue of the plea agreement he entered into, his maximum possible penalty was capped at five years' imprisonment.  The actual sentence he received was four years' imprisonment with one year suspended, meaning he would never have to serve the last year of his sentence if he had no parole violations once he was released from prison.  By successfully overturning the plea, he would have been subjecting himself once again to a possible life sentence of imprisonment.  No rational client would do that.

Also, Mr. Feist never reasonably demonstrated an interest in appealing, as discussed above.  When his counsel advised him that there were no issues to appeal, he said he was "cool" with that.  Although the consultation between counsel and Mr. Feist regarding an appeal was brief, the constitution did not, under these circumstances, demand an extensive consultation.  Flores-Ortega, 528 U.S. at 480.  The court recommends denying habeas relief on this ground as well.

50

### 2.     Miscellaneous Other Errors Alleged in Connection with the Judgment

Mr. Feist raises numerous other issues with regard to his judgment of conviction.  He claims it was "unduly" amended; it did not match the case summary, the indictment, the information, or the plea bargain; and it was not filed in the clerk's office correctly.  Mr. Feist does not identify which of his constitutional rights were allegedly violated by these alleged mistakes and the court has not identified any constitutional bases either.

The only amendment the court can see between the original judgment and the amended judgment is that in the first judgment, Mr. Feist was ordered to repay the county his court-appointed attorney's fees in an amount to be determined.  In the amended judgment, that amount is reduced to a specific dollar amount and substituted into the judgment.  This is not a substantitve change as Mr. Feist knew at the sentencing hearing he was being ordered to pay his attorney's fees.  It is the amount only that was later inserted in the amended judgment.  Mr. Feist does not argue that the amount is wrong.

The terms of the judgment track the terms of the plea agreement and the information to which Mr. Feist pleaded no contest.  The fact that the judgment does not match the indictment follows from the terms of the plea agreement:  to Mr. Feist's advantage, the state agreed to dismiss the indictment with its more serious charges.  It was expected by all parties that the judgment would not match the indictment.

Mr. Feist does not explain how the judgment was incorrectly filed in the clerk's office, but even if this is true, it is a state law violation, not a

51

constitutional or federal statutory violation.  As such, it does not provide grounds for a federal habeas petition.  <u>Estelle</u>, 502 U.S. at 67-68.  The court recommends no habeas relief be granted on the grounds of alleged irregularities with Mr. Feist's judgment.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that respondents' motion to dismiss [Docket No. 16] be granted and that Mr. Feist's habeas petition [Docket No. 1] be dismissed with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED December 28, 2016.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge